IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Joseph Ernest Smith,<br><br>               Plaintiff,<br><br>v.<br><br>Jon Ozmint, Director; Cecilia Reynolds, Warden Kershaw Correctional SCDC; Jerry Washington, Associate Warden Kershaw Correctional SCDC; Darren Seward, Major Kershaw Correctional SCDC; Samantha Gardner, Mental Health Kershaw Correctional SCDC; John Lagrande, Officer Kershaw Correctional SCDC; Priscilla Hough, Grievance Coordinator Kershaw Correctional SCDC; and Kristopher Sweet, Sargent Kershaw Correctional SCDC,<br><br>               Defendants. | Civil Action No.2:10-cv-02063-JFA-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

       The Plaintiff, a state prisoner proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Defendants' Motion for Summary Judgment. (Dkt. No. 64.)

       Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

       The Plaintiff brought this action on or about August 10, 2010, and on or about June 17, 2011, the Plaintiff filed an Amended Complaint. (See Dkt. No. 1; see also Dkt. No. 54.) On September 30, 2011, Defendants filed a Motion for Summary Judgment. (Dkt. No. 64.) By order filed October 3, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 65.) On or about November 3,

2011, the Plaintiff filed a response opposing Defendants' Motion for Summary Judgment. (Dkt. No. 67.)

**PROCEDURAL FACTS**

Plaintiff, who is currently housed at McCormick Correctional Institution ("MCI"), alleges claims pursuant to 42 U.S.C. § 1983, for events that allegedly occurred at Kershaw Correctional Institution ("KCI"). Plaintiff alleges that on January 24, 2010, five inmates approached him, threatened him with a knife, and told him to go into the recreational yard "to catch contraband being thrown inside the institution, or [he] would be 'wet up[,]' which is stabbed." (Am. Compl. ¶ 12.) Plaintiff states that he did as instructed but "was hurt and caught in the process" by Defendant Sweet and other officers who "refused to give their names." (Id.) Plaintiff alleges that Defendant Sweet, who was aware that Plaintiff's hand had a severe cut and that Plaintiff had injuries to his feet preventing him from walking "without severe pain," "handcuffed [Plaintiff's] hands behind [his] back and made [Plaintiff] walk upon injured feet, in serious pain, to the operations holding cell of [KCI], then onto the medical facility without the aid to walk or without aid of a wheelchair." (Id. ¶ 14.)

Plaintiff was subsequently placed in the Special Management Unit ("SMU") and charged with "901: escape or attempted escape." (Am. Compl. at 3 of 9.) According to Plaintiff, on January 25, 2010, Defendant Seward asked Plaintiff who threatened him, and Defendants Seward, Reynolds, and Washington "placed [the] inmate [that Plaintiff] described on special management unit (lock-up) three (3) doors away from the cell [in] which [Plaintiff] was placed." (Id.) Plaintiff alleges this inmate "started yelling and threatened [Plaintiff], stating [that Defendant] Seward had told him that [Plaintiff] . . . told on him . . . and that he was going to get [Plaintiff] 'touched up,' which is assaulted." (Id.) Plaintiff contends that Defendants Seward, Reynolds, and Washington violated his Fourteenth Amendment rights "by placing [this] inmate within distan[ce] of [Plaintiff], so that inmate was able to talk

of what happened with other inmates," and violated his Eighth Amendment rights "by placing [the] inmate where he could verbally threaten [Plaintiff's] life and well being, causing [Plaintiff] physiological harm. . . " (Id.) Plaintiff also complains that these three Defendants violated "due process of law by informing the inmate what [Plaintiff] said." (Id.)[1]

Plaintiff further complains of Defendant Seward, stating that on March 22, 2010, Seward brought restitution papers to Plaintiff, and Plaintiff informed Seward that the charges were wrong and needed to be fixed. (Id. at 4.) Plaintiff alleges that Seward "became loud and aggressive in a threatening manner," and stated that Plaintiff "had better not act hard" or Seward would put Plaintiff "back into the unit [he] was in (Oak) with the inmates and their friends" or send Plaintiff to Ridgeland, the institution where the inmate identified by Plaintiff had been transferred. (Id.) Plaintiff contends that Seward violated his Eighth Amendment rights, stating (verbatim),

> Defendant Major Darren Seward exhibited deliberate indifference to my safety by speaking out loud, and from telling the inmate which I described, the information which I gave the Major, and from failing to prevent future harm from inmates whom might of heard Major Seward! That are friends with the inmates who threatened me. Also by having caused me to be labeled "snitch" or a person whom will tell, within the Department of Corrections, which upon itself can cause me physical harm. Major Darren Seward further violated my 8th Amendment of cruel and unusual punishment inflicted and unnecessary and wanton of pain, by causing me physiological harm.

(Id.)

---

[1] Although the alleged time frame is not clear, Plaintiff alleges that Defendant Lagrande also violated his Eighth and Fourteenth Amendment rights by asking Plaintiff "questions about the incident and making comments in front of other inmates." (Am. Compl. at 3.) According to Plaintiff, asking these questions violated his Fourteenth Amendment rights "because the case had not been tried yet before a disciplinary hearing and was still an ongoing investigation," as well as his Eighth Amendment rights because "speaking of [the] incident in front of other inmates" caused him "physiological harm . . . possibly causing [Plaintiff] present and future harm, and by causing [Plaintiff] to be paranoid to the degree of fright." (Id.) In addition, Plaintiff contends that Seward, Reynolds, and Washington "violated [his] 14th Amendment for due process of law, and equal protection," by failing to file charges against the inmate who threatened Plaintiff. (Id. at 5.)

3

Plaintiff also sues Defendant Samantha Gardner for allegedly deficient mental health care at KCI. Plaintiff complains that on August 11, 2010, he complained of stress and depression to Gardner, who did nothing. (Id.) According to Plaintiff, on or about August 25, 2010, Gardner told him to sign up for sick call; although he saw medical on September 14, 2010, "complained of depression and asked to see mental health," mental health "once again failed to come see" Plaintiff. (Id. at 5.) Plaintiff alleges he "finally" saw Gardner on November 10, 2010, "and told her that [he] was unable to sleep and suffered from depression and anxiety and explained [his] symptoms," but she "fail[ed] to do anything medically or professionally about [his] mental and emotional pain." (Id.) Plaintiff alleges that while Gardner told Plaintiff that she would schedule an appointment with the doctor for Plaintiff, the "doctor failed to come see" him. (Id.)

In a section of his Amended Complaint entitled "Exhaustion of Legal Remedies," Plaintiff alleges that he "used or tried to use the prison grievance procedure available at . . . [KCI] to try to solve all the problems described within this complaint." (Id. at 7.) Plaintiff contends that he filed appeals on all of his grievances except one and that he "could not go forward with [the] grievance process due to the South Carolina Department of Corrections[,] and particularly . . . [Defendants Reynolds and Hough], failing to process Plaintiff's grievance or direct Plaintiff on how to proceed to properly do the grievance." (Id.)

Plaintiff states that he seeks, *inter alia*, both compensatory and punitive damages, as well as declaratory and injunctive relief. (Id. at 8.)

## **APPLICABLE LAW**

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

4

"Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, Defendants filed a Motion for Summary Judgment on September 30, 2011. (Dkt. No. 64.) The undersigned will address Defendants' arguments in turn.

### I. Exhaustion of Administrative Remedies

Defendants contend that while Plaintiff alleges they violated his constitutional rights on or about January 24, January 25, January 26, March 22, August 3, August 25, September 14, and November 10 of 2010, he "failed to exhaust all available administrative remedies" because he "failed to timely file institutional grievances regarding the incidents on those dates." (Mem. in Supp. at 4.) According to Defendants, the "only grievance filed by Plaintiff with respect to the issues raised in his Amended Complaint was filed on or about May 18, 2010." (Id. at 6.) Defendants contend this grievance complained of threats "allegedly made towards him on or about March 22, 2010," but it was returned unprocessed "because it was not timely filed." (Id.)

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Through the enactment of this statute, "Congress has

5

mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) (exhaustion required even though the plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 18 Fed. App'x 243 (4th Cir. Sept. 18, 2001) (applying Booth v. Churner to affirm the district court's denial of relief to the plaintiff).

However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). [W]hen prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality." Zander v. Lappin, 415 Fed. App'x 491, 492 (4th Cir. Mar. 10, 2011) (quoting Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)). The district court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Id. (quoting Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)).

Defendants presented the Affidavit of Pamela Hough, a Grievance Coordinator for the South Carolina Department of Corrections ("SCDC"). (See Hough Aff. ¶ 1; Dkt. No. 64-1.) Ms. Hough states that Plaintiff filed Step I Grievance KRCI 0223-10 on February 2, 2010, alleging that he was improperly charged following an escape conviction. (Hough Aff. ¶ 8.) According to Hough, however, this grievance is "unrelated to any of the allegations at issue in the present case and was strictly intended to appeal his escape conviction." (Id.) Step 1 Grievance KRCI 0224-10, filed on February 5, 2010, was "returned unprocessed due to its duplicative nature" wherein Plaintiff again "attempted to challenge findings following his escape conviction." (Id. ¶ 9.) Finally, Hough states that Plaintiff filed Step 1 Grievance KRCI 0884-10 on May 18, 2010, alleging that Defendant Seward made threatening remarks towards Plaintiff. (Id. ¶ 10.) According to Hough, this grievance was returned unprocessed

6

"for failure to file within the proper time period." (Id.) Hough states that "[n]o other Grievances or appeals were filed by Plaintiff related to the Complaint at issue in the present case." (Id.) She further states, "**Mr. Smiths' [sic] records fail to reflect a proper prisoner grievance completed in accordance with SCDC Policies and Procedures prior to filing suit in the present case**." (Id. ¶ 7.) Defendants contend they are entitled to summary judgment because "Plaintiff has not shown . . . that there is any genuine issue of material fact as to whether Plaintiff exhausted the administrative remedies available to him." (Mem. in Supp. at 6.)

Plaintiff admits in his Response that he "did not file a grievance on August 3rd, 25th, September 14th, or November 10th of 2010" because "Plaintiff knew that Defendants would stop the process, so Plaintiff decided he would be more successful [in] seek[ing] justice with the courts!" (Resp. in Opp'n at 8 of 12.)[2] Plaintiff's opinion that he would be more successful in court does not eliminate his duty to exhaust his administrative remedies, nor is this evidence that administrative remedies were not available. See Moore, 517 F.3d at 729-30 (holding the district court properly concluded the plaintiff failed to exhaust his administrative remedies on his gout claim because the plaintiff "had no excuse for not resubmitting the grievance . . . when Step 2 of his Hepatitis C grievance was completed"); see also Blakely v. Tatarsky, C/A No. 4:08-3609-MBS, 2009 WL 2922987, at *5 (D.S.C. Sept. 1, 2009) (noting that although a "grievance procedure is 'not available' if prison officials prevent an inmate from using it," there is "no futility exception to the PLRA's exhaustion requirement" (internal quotation marks and citations omitted)); Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999) ("Contrary to [the plaintiff's] suggestion, the PLRA does not condition the

---

[2]Despite this statement in his Response in Opposition, it does appear that Plaintiff filed a grievance on November 9, 2010. (See Dkt. No. 54-1 at 8 of 12.)

7

applicability of the exhaustion requirement on the effectiveness of the administrative remedy available in a given case.").

In his Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiff points to the exhibits attached to his Amended Complaint. (See Resp. in Opp'n at 2.) Specifically, Plaintiff points to Exhibits A and B, which he contends were "returned unprocessed due to time frames." (Id.) Plaintiff states that he "cannot be held responsible for failure to complete or exhaust administrative remedies when in 'fact' Plaintiff did file grievances on Plaintiff's stated claims, but Defendants failed to process the grievances!" (Id.) Plaintiff also refers to Exhibits H, I, and J of his Amended Complaint. (See id.. at 8.) Exhibit H is a Step 1 Grievance (No. KRCI 0884-10), filed by Plaintiff on May 18, 2010. (See Dkt. No. 54-1 at 7 of 12.) In that grievance, Plaintiff complains about incidents that allegedly occurred on January 24, 2010, and March 22, 2010. (Id.) Step 1 Grievance No. KRCI 0884-10 was "returned unprocessed" because Plaintiff failed to file the grievance within "15 days of the incident." (Id.) Exhibit I is a Step 1 Grievance (No. KRCI 2109-10), filed by Plaintiff on November 9, 2010. (See Dkt. No. 54-1 at 8 of 12.) In this grievance, Plaintiff complains that despite his several attempts to be seen by mental health, he has not been seen. (Id.) The Warden denied this grievance on December 8, 2010, stating that "[a]gency records indicate that [Plaintiff was] seen by Mental Health on 11/4/10." (Id.) Exhibit J is a Step 2 Grievance (No. KRCI 2109-10), appealing the Warden's denial of this grievance. (See Dkt. No. 54-1 at 10 of 12.) This appeal was denied on May 18, 2011. (Id.)

The undersigned recommends granting Defendants' Motion for Summary Judgment for failure to exhaust administrative remedies on all claims except Plaintiff's claim related to mental health treatment. The undisputed evidence shows that Plaintiff's grievances filed in February of 2010 pertain only to his conviction of escape; they do not pertain to the issues in the case *sub judice*. Although the grievance filed on May 18, 2010, does pertain

8

to this case, that grievance was returned unprocessed because it was not timely filed. Plaintiff contends he cannot be held responsible for failure to exhaust because the grievance was returned unprocessed. Plaintiff is incorrect. See Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). "The fact that a grievance was unprocessed, without more, is insufficient to show that [the Defendants] prevented [the Plaintiff] from exhausting his administrative remedies." Bryan v. S.C. Dept. of Corrs., No. 4:08-cv-1590-TLW-TER, 2009 WL 702864, at *3 (D.S.C. Mar. 16, 2009); see also Peoples v. SCDC, C/A No. 8:07-2897-CMC-BHH, 2008 WL 1902718, at *1 (D.S.C. Apr. 28, 2008). A returned and unprocessed grievance does not necessarily render remedies "unavailable." See Peoples, 2008 WL 1902718, at *1. Plaintiff was free to file a Step 2 Grievance or otherwise appeal the determination of this Step 1 Grievance but instead did nothing. Although the grievance filed May 18, 2010 was returned unprocessed, there is no evidence that Defendants prevented Plaintiff from using the administrative remedy process.

Plaintiff contends his May 18 grievance was not timely because he first had to file a Request to Staff, which "takes up to 30 days to be answered, [and] sometime[s] it is not answered at all and must be refiled." (Resp. in Opp'n at 8.) Plaintiff states, "[D]ue to that process, before filing a grievance, Plaintiff did not have time to be able to file the grievance within fifteen days." (Id.) This very argument was considered and rejected in Perry v. Obverman, C/A No. 4:09-551-TLW-TER, 2010 WL 2721204 (D.S.C. Apr. 20, 2010), *adopted at* 2010 WL 2720921 (D.S.C. Jul. 8, 2010). The court noted the plaintiff's argument that "he was told he had to informally address the issues before filing a grievance and by the time he filed the grievance, they were returned as being outside of the deadlines." Perry, 2010 WL 2721204, at *3. The court rejected that argument, concluding that the plaintiff failed to

9

exhaust his administrative remedies because he did not appeal the Step 1 grievances that were returned as being outside of the deadlines. Id. Similarly, Plaintiff did not appeal the denial of this Step 1 grievance, and he therefore failed to properly exhaust the issues raised therein.

Although Plaintiff states in his Response that he "did not file a grievance on August 3rd, 25th, September 14th, or November 10th of 2010" because he "knew that Defendants would stop the process," Plaintiff did file a grievance on November 10, 2010, related to his mental health treatment. (See Resp. in Opp'n at 8 of 12.) Because Plaintiff filed a Step 1 and Step 2 grievance on this issue, the undersigned will address the merits of that claim.

## II.     Deliberate Indifference

As noted above, Plaintiff complains about allegedly deficient mental health care. (See Am. Compl. at 4-5.) Defendants contend they are entitled to summary judgment on this claim because, *inter alia*, "Plaintiff has failed to state a claim under 42 U.S.C. § 1983 for a violation of the Eighth or Fourteenth Amendments." (Mem. in Supp. at 6.)

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citations omitted). To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir.

1999); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

Along with their Motion for Summary Judgment, Defendants filed the Affidavit of Defendant Samantha Gardner, Lead Clinical Counselor at KCI. (See Dkt. No. 64-4.) Ms. Gardner's Affidavit states, *inter alia*,

> 4. That I have been named as a defendant in this action; that I am generally familiar with allegations contained in the Amended Complaint; and that I am informed and believe that Plaintiff alleges, in part, that I failed to properly respond to his requests for mental health counseling in August, September and November of 2010.
>
> . . .
>
> 6. That I am informed and believe that SCDC policy provides a procedural mechanism for making mental health requests and referrals and for lodging complaints about alleged inadequate health care; and that pursuant to said policy, inmates desiring mental health services must first complete a "Request to Staff" form to see medical staff, and medical staff then refers inmates to mental health staff as appropriate. . . .
>
> . . .
>
> 7. That I am further informed and believe that Plaintiff alleges that on August 3, 2010 he made a request to the medical division that he be seen by a mental health counselor. That on or about August 11, 2010, I observed Plaintiff standing at his cell door. The Plaintiff complained of stress, but gave good eye contact and smiled. He voiced no depression or anxiety and denied suicidal or homicidal ideations at that time. I assessed the Plaintiff as stable, but kept Plaintiff on my regular evaluation schedule for monitoring. . . .
>
> 8. On August 25, 2010, Plaintiff sent a general Request to Staff to me which was returned to Plaintiff with instructions to sign up for sick call in accordance with SCDC Policy HS-18.05. . . .
>
> 9. On September 9, 2010, Plaintiff sent a general Request to Staff to KCI Medical requesting sick call wherein the Plaintiff was scheduled for evaluation on September 14, 2010. . . . On September 14, 2010, the Plaintiff again denied suicidal or homicidal ideations and hallucinations. The Plaintiff voiced understanding of the plan of care at that time and left with all questions answered. . . .

11

> 10. On November 4, 2010, I again evaluated Plaintiff in accordance with SCDC Policy. The Plaintiff was observed to be smiling and denied suicidal or homicidal ideations at that time. He voiced no sadness or anxiety, and was goal directed and did not appear to be in acute distress. I assessed the Plaintiff as stable, but kept Plaintiff on my regular evaluation schedule for monitoring. . .
>
> 11. On January 6, 2011, I again evaluated the Plaintiff per medical referral. The Plaintiff complained of anxiety at that time, but voiced no concerns about safety. The Plaintiff did not appear overly anxious and appeared to be drug seeking at that time. The Plaintiff was perceived to have adequate coping skills and did not appear to need additional mental health services.
>
> 12. That upon reviewing the medical records and treatment for Plaintiff, it is my opinion that the mental health treatment was appropriate for Plaintiff's complaints and did not constitute any deviation from the generally accepted standards within my profession. Plaintiff received excellent quality care while at Kershaw Correctional Facility for the duration of his treatment and, it is my opinion, the mental health care, treatment, and attention that Plaintiff received was properly administered and was the best course of care and treatment for his alleged complaints.

(Gardner Aff.; Dkt. No. 64-4.)

In his Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiff points to Exhibits A through E of his Amended Complaint. (See Resp. in Opp'n at 4.) Exhibit A and B are portions of Plaintiff's medical records maintained by SCDC. (See Dkt. No. 54-1 at 1 of 12.) Exhibit A indicates Plaintiff submitted a Request to Staff "wanting to be seen on sick call" for, *inter alia*, mental health. (Id.) Exhibit A further states, "Name placed on SMU Sick Call list for 8/6/10." (Id.) Exhibit B is Defendant Gardner's notes for a Mental Health "encounter" on August 11, 2010; those notes generally match the description of this encounter in her Affidavit. (Id.; see also Gardner Aff. ¶ 7.) Exhibit C is a Request to Staff, to Defendant Gardner, dated August 25, 2010. (Dkt. No. 54-1 at 2 of 12.) In that Request to Staff, Plaintiff indicates that Gardner "saw [him] on the 12th," and Plaintiff told her he "needed to see [her] in private because of some problems [he's] been having." (Id.) Plaintiff states, "I'm tired of wasting my money for sick call and still not being able to see you." (Id.)

Gardner's response states, "You need to sign for sick call." (Id.) Exhibit D is a Request to Staff Member dated September 9, 2010; in it, Plaintiff states that he "need[s] to see mental health for depression." (Dkt. No. 54-1 at 3 of 12.) The "Disposition By Staff Member" section of the Request indicates that Plaintiff was signed up for sick call on September 14, 2010. (Id.) Finally, Exhibit E, another portion of Plaintiff's medical records, are the notes of the Sick Call "encounter" on September 14, 2010. (Dkt. No. 54-1 at 4 of 12.) It appears that Plaintiff had several medical complaints that day, including "I need to sign up for CCC to discuss depression." (Id.) The notes further indicate that "CCC paperwork [was] initiated." (Id.)

In addition to referencing those exhibits, Plaintiff states that Defendant Gardner "is a social worker and therefore not certified to give medical analys[is] or treatment for anxiety and depression and should have made Plaintiff an appointment with a doctor!" (Resp. in Opp'n at 5 of 12.) Plaintiff also points to his medical records–submitted by Defendants in support of their Motion for Summary Judgment–starting from September 14, 2010. (Id. at 10.) These records indicate that on October 25, 2010, at Sick Call, Plaintiff advised that he needed to sign up for Mental Health. (See Dkt. No. 64-6 at 7 of 8.) On or about December 2, 2010, Plaintiff submitted a Sick Call request, wanting to see Mental Health; Plaintiff's name was placed on the Sick Call list for December 2, 2010. (Id.) At Sick Call on December 2, Plaintiff stated that he "ha[d] been having a lot of anxiety, stress, and depression lately." (Id.) Plaintiff was seen in the Mental Health Clinic on January 6, 2011. (See Dkt. No. 64-6 at 5 of 8.) Ms. Gardner concluded that Plaintiff did not need additional mental health services. (Id.; see also Gardner Aff. ¶ 12.)

The undersigned recommends granting Defendants' Motion for Summary Judgment as to Plaintiff's claim of deliberate indifference related to mental health care. Ms. Gardner, Lead Clinical Counselor at KCI, saw Plaintiff on August 11, 2010, and November 4, 2010, both times assessing Plaintiff as stable. (Gardner Aff. ¶ 7, ¶ 10.) She evaluated Plaintiff

13

again on January 6, 2011, wherein she concluded that Plaintiff "did not appear to need additional mental health services." (Id. ¶ 11.) While Plaintiff may have desired different mental health treatment, or to have been seen by Mental Health sooner than he was, there is no evidence in the record of deliberate indifference. See Wright, 766 F.2d 841 (disagreement as to the proper medical care is not sufficient to establish deliberate indifference to a serious medical need); Tozzi v. N.C. Dep't of Corr., 846 F.2d 74 (4th Cir. 1988) (unpublished table decision) (citing Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)) ("Absent exceptional circumstances, a difference of opinion between a physician and a prisoner about the appropriate treatment of a condition does not constitute . . . deliberate indifference."); see also Estelle, 429 U.S. at 105-06 ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' . . . . Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The undersigned therefore recommends granting Defendants' Motion for Summary Judgment with respect to the deliberate indifference claim related to mental health treatment.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. No. 64) be GRANTED as to Plaintiff's federal claims. To the extent Plaintiff's

Amended Complaint contains claims pursuant to state law, it is further RECOMMENDED that these claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

February 29, 2012
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).